IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:21-cv-00109-MR

| | |
|---|---|
| WILLIAM BRADLEY MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| STANLEY DALE CHURCH, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants Stanley Dale Church, Luis Velasco, and Michael V. Baker's Motion for Summary Judgment [Doc. 35].

**I.    BACKGROUND**

The incarcerated Plaintiff William Bradley Moore, proceeding pro se, is incarcerated in the North Carolina Department of Adult Corrections ("NCDAC").  The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1]  [See Doc. 1: Complaint]. The Plaintiff's unverified Amended

---

[1] The Plaintiff is presently incarcerated at the North Carolina Central Prison.

Complaint[2] passed initial review against Defendants Church, Velasco, and Baker on Eighth Amendment claims for the use of excessive force and failure to intervene. [Doc. 5: Am. Compl; Doc. 9: Order on Initial Review]. The claims against the Defendants in their official capacities were dismissed with prejudice.[3] [Doc. 9: Order on Initial Review at 3-4]. The Plaintiff seeks compensatory and punitive damages. [Doc. 5: Am. Compl. at 5].

The Defendants filed the instant Motion for Summary Judgment. [Doc. 35: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 39: Roseboro Order]. The Plaintiff filed an unverified Response. [Doc. 42: MSJ

---

[2] The Plaintiff filed the Amended Complaint before the Complaint had been reviewed for frivolity. The Complaint is not signed under penalty of perjury. See 28 U.S.C § 1746. It contains a Notarial Certificate which indicates only that the Plaintiff signed the Complaint. [Doc. 1: Complaint at 6-7]. Such certification is not the equivalent of a verification or affidavit, and it is not a certification that the Plaintiff swore to the truth of the Complaint's contents. See generally N.C. Gen. Stat. § 10B-41 (describing notarial certificate of acknowledgement); Pratt v. Allbritton, No. 4:16-cv-00198-BR, 2018 WL 4610151, at *7 (E.D.N.C. Aug. 8, 2018), *report and recommendation adopted*, No. 4:16-cv-198-BR, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), *aff'd sub nom*. Pratt v. Albriton, 764 F. App'x 343 (4th Cir. 2019). Accordingly, the Complaint will not be considered in the summary judgment analysis.

[3] The Court, therefore, will not address the Defendants' present argument that the Plaintiff's official-capacity claims should be dismissed. [See Doc. 37: MSJ Memo. at 20].

2

Response]. The Defendants have not replied, and the time to do so has expired. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat

3

a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)

4

(footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.

The Plaintiff is serving a 16-year sentence for a number of offenses, including robbery with a dangerous weapon (principal), first-degree kidnapping (principal), assault with a deadly weapon (principal), and possession of a firearm by a felon (principal). [See Doc. 38-1: MSJ Ex (OPUS Report)]. Between the Plaintiff's admission to NCDAC in October 2009 and the date of the incident at issue in January 2021, the Plaintiff had received 46 disciplinary infractions for offenses including "disobey order" (11); "assault person w/weapon" (2); "fight w/ weapon or req. out. med" (1); "threaten to harm/injure staff" (1); and "fighting" (2). [Doc. 38-2: MSJ Ex (Infraction Report)].

On January 16, 2021, Officer Baker responded to a Code 4 request for assistance at approximately 2:05 p.m. [Doc. 38-7: Baker Decl. at ¶ 6; see Doc. 38-5: MSJ Ex at 17 (Baker Statement)]. Baker observed the Plaintiff being combative with staff and refusing to submit to restraints. [Doc. 38-7: Baker Decl. at ¶ 7; id.]. Baker and other officers put the Plaintiff into restraints and began escorting him to restrictive housing. [Doc. 38-7: Baker Decl. at ¶¶ 8-9].

While the Plaintiff was being escorted into the hallway, he became combative again and attempted to pull and turn away from the escort. [Id. at ¶ 10]. Officer Baker placed the Plaintiff against the nearest flat surface, the floor, in order to gain compliance and control. [Id. at ¶ 11]. At no time was the Plaintiff punched or kicked in the face or head; he was placed on the ground pursuant to procedure when he became combative. [Id. at ¶ 12]. The Plaintiff was secured in leg restraints, and he was escorted to restrictive housing. [Id.]. The minimum amount of force was used to obtain the correctional objective. [Id. at ¶ 13].

The Plaintiff received a use of force evaluation at the Clinic at 2:30 p.m. [Doc. 38-6: MSJ Ex at 30]. The Plaintiff complained that he had been pepper sprayed and needed to "decon." [Id.]. He appeared to be in pain; he had two minor lacerations on top of his head, a laceration above his right eye,

and a swollen nose; and he complained of having an electric control device used to his buttocks, although no burn marks or prongs were noted. [Id. at 30-31]. The Plaintiff was sent to an outside emergency department for evaluation. [Id. at 32]. The Plaintiff received three staples to his scalp and four stitches to his eyebrow at the Catawba Valley Medical Center. [Doc. 38-6: MSJ Ex at 158-62]. CT scans of his cervical spine and head revealed no acute findings. [Id. at 164-65].

The Plaintiff received disciplinary infractions for "disobey order" and "profane language" for the January 16, 2021 incident. [See Doc. 38-2: MSJ Ex (Infraction Report)].

The Defendants have manually filed video exhibits containing footage from the housing pod [Doc. 38-8], control booth [Doc. 38-9], and hallway [Doc. 38-10] that show the following events:[4]

| | |
|---|---|
| 2:04:37 | The Plaintiff is standing at an upper tier cell door when Officer Velasco comes into view and appears to call up to the Plaintiff [Doc. 38-8] |
| 2:04:42 | The Plaintiff, at the top of the stairs, and Velasco, in the Dayroom, appear to converse; the Plaintiff descends the stairs, speaking and gesturing [Doc. 38-8] |
| 2:04:52 | The Plaintiff exits the stairs and crosses the Dayroom to the water fountain [Doc. 38-8] |

---

[4] The videos are partially obstructed by physical barriers such as the control booth walls and hallway doors, and by the cameras' limited range of view.

7

| | |
|---|---|
| 2:05:00 | The Plaintiff continues conversing with Velasco and gesturing [Doc. 38-8] |
| 2:05:06 | Velasco speaks into his radio and begins walking towards the Plaintiff, accompanied by Officer Howell [Doc. 38-8] |
| 2:05:17 | The Plaintiff walks towards Velasco, speaking, and Velasco reaches for his pepper spray [Doc. 38-8] |
| 2:05:18 | Velasco pepper sprays the Plaintiff, who turns his face and walks away from the officers [Doc. 38-8] |
| 2:05:20 | Velasco grabs one of the Plaintiff's arms, places his other arm behind the Plaintiff's back, and directs Plaintiff to the floor; Plaintiff struggles and tries to stand [Doc. 38-8] |
| 2:05:22 | Booth officer speaks into the radio [Doc. 38-9] |
| 2:05:23 | Officer Howell joins Velasco and the Plaintiff on the floor as the Plaintiff continues to struggle and resist [Doc. 38-8] |
| 2:05:32 | Additional officers arrive; Howell begins to deliver strikes with a closed fist [Doc. 38-8; Doc. 38-9] |
| 2:05:41 | The Plaintiff continues to resist [Doc. 38-9] |
| 2:05:52 | The Plaintiff is handcuffed [Doc. 38-8] |
| 2:06:50 | The Plaintiff is lifted to his feet and is escorted to the hallway [Doc. 38-8; Doc. 38-9] |
| 2:07:01 | Near the hall entrance, the Plaintiff pulls and turns away from the escorting officers [Doc. 38-9] |
| 2:07:02 | The Plaintiff is directed to the floor and appears to strike a gray bin with his head; multiple officers restrain him [Doc. 38-10] |

| | |
|---|---|
| 2:09:04 | The Plaintiff is lifted to his feet and he walks down the hallway under escort; his face and head are bloody [Doc. 38-10] |

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he

9

has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff claims that the Defendants violated the Eighth Amendment when Velasco pepper sprayed him and tackled him to the ground; when Velasco and Baker slammed him to the ground and kicked and punched his head and face while Church stood by; and when Church dry-tased him after he was restrained. [Doc. 5: Am. Complaint at 4-6]. However, the Plaintiff has not forecast any evidence in support of these claims. The forecast of evidence demonstrates that the Plaintiff repeatedly refused to follow verbal commands; that the Plaintiff physically resisted officers; and that the use of force, including pepper spray and hands-on force

of multiple officers, was required to overcome the Plaintiff's resistance and to restrain him. [See Doc. 38-7: Baker Decl. at ¶¶ 4, 7, 10-13; Doc. 38-8; Doc. 38-9; Doc. 38-10]. There is no evidence whatsoever that any Defendant kicked or punched the Plaintiff's face or head, used more force than was reasonably warranted under the circumstances, or failed to intervene to prevent the Plaintiff's constitutional rights from being violated. [See Doc. 38-7: Baker Decl. at ¶ 12; Doc. 38-8; Doc. 38-9; Doc. 38-10]. The Plaintiff has presented nothing to overcome what is shown on the video, which is undisputed. [Doc. 38-10]. Because there is no forecast of evidence that any Defendant violated the Eighth Amendment, the Defendants' Motion for Summary Judgment is granted

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation

marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not forecast evidence that any Defendant violated a constitutional right, the Defendants are also entitled qualified immunity. Accordingly, summary judgment is granted on this ground as well.

## IV. CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 35] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: November 7, 2023

Martin Reidinger
Chief United States District Judge